<u>NOT FOR PUBLICATION</u>

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                       :
JODY A. MORGAN,                        :
                                       :
                 Plaintiff,            :
                                       :         Civil Action No. 06-1659
        v.                             :
                                       :         <u>OPINION</u>
COMMISSIONER OF SOCIAL                 :
SECURITY ADMINISTRATION,               :
                                       :
                 Defendant.            :
_____:

<u>CHESLER, S., U.S.D.J.</u>

### <u>INTRODUCTION</u>

Plaintiff Jody Morgan, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g),[1] seeks review of the Commissioner of Social Security Administration's ("Commissioner") decision denying her application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  Plaintiff argues that the decision is not supported by substantial evidence and should be reversed.  For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and should be affirmed.

---

[1]These sections of the Social Security Act (hereinafter "Act") provide that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On July 24, 2003, Plaintiff filed an application for DIB and SSI benefits pursuant to Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A), respectively.  (Tr. 55-57, 221-23.)[2]  Plaintiff's claim is based on her alleged depression and panic attacks as independent impairments or, in the alternative, in the aggregate.  (Pl.'s Brief at 9-11.)  The Social Security Administration denied Plaintiff's application on December 8, 2003.  (Tr. 22.)  Plaintiff filed a request for reconsideration on January 9, 2004.  (Tr. 33.)  The denial was affirmed on April 20, 2004.  (Tr. 35-38.)  Subsequent to Plaintiff's request for a hearing, dated May 10, 2004, Plaintiff appeared before Administrative Law Judge Marilyn Faulkner ("ALJ Faulkner") on August 8, 2005.  (Tr. 242.)  ALJ Faulkner issued a decision on November 21, 2005, finding that the Plaintiff was not eligible for DIB or SSI benefits based upon her disabilities.  (Tr. 14-21.)  The following is a summary of her findings:

1.  The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not been engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's depression, panic attacks, and drug and alcohol disorder are severe impairments, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.  These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405(g).  "Tr." refers to said transcript.

5.     I find that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has the following residual functional capacity: to perform low stress, unskilled work activity at any level of exertion which does not involve frequent contact with others.

7.     The claimant's past relevant work as a housecleaner did not require the performance of work-related activities precluded by such limitations (20 CFR §§ 404.1565 and 416.965).

8.     The claimant's impairments do not prevent her from performing her past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 20-21.)  Based on these findings, ALJ Faulkner concluded that Plaintiff was not eligible for DIB or SSI benefits under §§ 216(i), 223, 1602 and 1614(a)(3)(A) of the Act.  (Tr. 21.)  On February 24, 2006, the Administrative Appeals Judge Daphne J. Kerr denied Plaintiff's appeal of ALJ Faulkner's decision.  (Tr. 4.)  Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.

## STATEMENT OF THE FACTS

**A.**    **Background**

Plaintiff, Jody A. Morgan, was born on November 22, 1964, and stopped working on March 21, 2003 because of her claimed disabilities.  (Tr. 63.)  She testified that she completed special education up to the ninth grade, and is able to read and write in English.  (Tr. 246.)  Prior to March of 2003, Plaintiff worked as a housecleaner.  (Tr. 247.)  Prior to this job, Plaintiff

worked in a deli at a supermarket where she was on her feet all day, lifting and carrying products such as meat and cheese.  (*Id.*)  Plaintiff also testified that prior to that employment, she temporarily worked in a warehouse for a period of about two months.  (*Id.*)

**B.      Claimed Disabilities**

Plaintiff stopped working in March 2003, allegedly because of her psychological condition, which caused her to talk to herself while working, be fearful of others, have panic attacks, and suffer from depression.  (Tr. 249-52.)  She testified that she had panic attacks at work, which would necessitate her stopping to focus before she could continue with the task at hand.  (Tr. 253.)  Plaintiff further testified that she experienced back pain during these panic attacks.  (*Id.*)  She also testified that she suffered problems with her memory and concentration. (Tr. 256.)  This problem allegedly makes it difficult for the Plaintiff to concentrate on anything. (Tr. 256-57.)  Plaintiff's testimony also indicates that she abused drugs from approximately 1983 through 1999.  (Tr. 255.)

Finally, Plaintiff testified that she saw "shadows at night" and heard "echoes" or "singing" accompanied by negative comments.  (Tr. 260.)

**C.      Medical Evidence Considered by the ALJ**

The record indicates that the Plaintiff has been evaluated by physicians on several occasions.

1.      Medical Records from Strathmore Treatment Associates

On October 2, 2000, Plaintiff was admitted to Strathmore Treatment Associates in South Amboy, New Jersey.  (Tr. 107.)  Plaintiff was admitted for daily heroin use, as well as weekly cocaine use.  (Tr. 108.)  Plaintiff was given methadone at this facility.  (Tr. 112.)  At the time, the

4

Plaintiff's readmission interview indicated that, during her last admission in 1999, her treatment was not completed.  (Tr. 109.)  The interview also noted that Plaintiff was satisfied with her job.  (*Id*.)  Plaintiff was discharged on June 1, 2003 against the advice of the staff at the facility.  (Tr. 108.)

2.    Medical Records from Raritan Bay Mental Health Center

Plaintiff was examined by principal psychiatric social worker Neil Geminder at Raritan Bay Mental Health Center on October 19, 1999.  (Tr. 115.)  Plaintiff was referred to the facility by her mother and sister, and complained of feelings of guilt, depression, and stress.  (*Id*.)  Mr. Geminder's mental status exam revealed that Plaintiff showed no evidence of psychosis; she was fully oriented; she was casually dressed, cooperative and frank; her mood was depressed; her insight was assessed to be fair, but her  judgment and concentration seemed impaired.  (Tr. 117.)  Mr. Geminder determined that Plaintiff was suffering from recurrent major depressive disorder without psychotic features.  (*Id.*)  Mr. Geminder noted that Plaintiff was scheduled for a follow-up therapy session and a psychiatric evaluation with Dr. Dube.  (*Id*.)  Some time after her psychiatric consultation on November 9, 1999, Plaintiff's case was closed because she stopped attending her treatment and could no longer be contacted.  (Tr. 122.)

Plaintiff was seen again at Raritan Bay Mental Health Center on February 19, 2003 by principal psychiatric social worker Gladys Cardona.  (Tr. 118).  Plaintiff was not referred by anyone, and arrived at the interview alone.  (*Id*.)  Plaintiff presented with complaints of increasing depression.  (*Id*.)   Ms. Cardona's mental status exam revealed that Plaintiff exhibited decreased motor activity; she was cooperative, and her responses were relevant and coherent, but her mood was depressed, with a flat affect; Plaintiff was fully oriented, with a slight limitation of

her insight, and her judgment seemed to border on impaired.  (Tr. 120.)  Ms. Cardona determined

that Plaintiff was suffering from recurrent major depressive disorder, alcohol dependence in full

remission, and opioid dependence in full remission.  (*Id*.)  Ms. Cardona recommended that

Plaintiff undergo individual counseling and a psychiatric evaluation, but noted that Plaintiff

requested her job not be notified of the treatment she was to receive.  (Tr. 121.)

On June 28, 2005, Dr. Villasenor, staff psychiatrist, and Alyce Lee, principal psychiatric

social worker, prepared Plaintiff's closing statement.  (Tr. 207.)  The reason listed for

termination was Plaintiff's failure to keep her appointments and failure to respond to attempts at

contact.  (*Id*.)  The last date that Plaintiff was seen was May 17, 2005.  (*Id*.)  The providers at the

Mental Health Center noted that Plaintiff's initial diagnosis had been recurrent major depressive

disorder without psychotic features, and alcohol and opioid dependence in full remission.  (*Id*.)

Plaintiff's termination diagnosis was listed as major depressive disorder without psychotic

features, alcohol dependence in remission, opioid dependence on agonist therapy, personality

disorder, economic distress, and homelessness.  (*Id*.)  Plaintiff had been treated with the

medications Seroquel, Trazadone, and Paxil.  (*Id*.)  At the time the case was closed, Plaintiff was

referred to Trinitas Outpatient and it was recommended that she continue her outpatient

methadone treatment.  (Tr. 207.)

3.    Dr. Joseph Buceta's Examination

Plaintiff was examined by Dr. Joseph Buceta, a medical evaluator for the New Jersey

Department of Labor, on November 17, 2003.  (Tr. 140-44.)  Plaintiff arrived at the examination

alone.  (Tr. 140.)  Dr. Buceta noted that Plaintiff complained of being depressed.  (*Id*.)  Plaintiff

told the doctor that her daily activities consisted of getting up at 5:30 a.m., taking her medication,

cleaning her home, watching television, attending her methadone program, preparing meals, and helping her children with homework, as well as visiting the library for related research.  (Tr. 141-42.)  Furthermore, as of the time of Dr. Buceta's examination, Plaintiff was in the care of a psychiatrist and psychotherapist.  (Tr. 142.)

Dr. Buceta concluded that Plaintiff was "able to follow all instructions, and she was able to follow all topics of conversation."  (Tr. 143.)  He determined she suffered from opiate dependence in recent remission, opiate-induced mood disorder, and methadone dependence.  (Tr. 144.)  He indicated her prognosis was fair, and that she was able to "handle her own funds."  (*Id*.)  Dr. Buceta opined that Plaintiff had a GAF score of 65.[3]  (Tr. 144.)  Dr. Buceta also confirmed that Plaintiff's medical history was unremarkable.  (Tr. 142.)

4.      Dr. Carlos Gieseken's Examination

On April 20, 2004, Dr. Carlos Gieseken assessed Plaintiff for the period between March 21, 2003 and December 5, 2003 for a mental residual functional capacity assessment.  (Tr. 145-48.)  Plaintiff complained of depression, schizophrenia, panic attacks, and obsessive-compulsive disorder.  (Tr. 147.)  Dr. Gieseken also noted that Plaintiff was hospitalized for psychiatric reasons in the past and was currently being treated for depression and was on methadone maintenance as an outpatient.  (*Id*.)  Dr. Gieseken's report notes that Plaintiff takes psychotropic medication.  (*Id*.)  The doctor's exam recorded that Plaintiff's ability to remember locations and

---

[3]A GAF scale ranges from 0 to 100, and generally a lower score indicates a more serious mental disorder; but, a score of 0 stands for "inadequate information," and a score of 100 indicates "[s]uperior functioning in a wide rage of activities . . . No symptoms."  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 27 (4th ed. Text Revision 2000) (indicating that a GAF score of 65 generally indicates that the plaintiff has mild symptoms, but overall can meaningfully function).

work-like procedures, and her ability to understand and remember easy instructions was not

significantly limited, while her ability to understand and remember more detailed instructions was

moderately limited.  (Tr. 145.)  Dr. Gieseken noted Plaintiff's ability to carry out simple

instructions, perform activities within a schedule, maintain a routine without supervision, and

make simple work-related decisions was not significantly limited, while her ability to carry out

more complicated instructions, sustain concentration for an extended period of time, work near

others without being distracted, and her ability to finish a normal workday were all moderately

limited.  (*Id.*)  In terms of Plaintiff's social interaction, Dr. Gieseken noted that her ability to ask

for simple assistance, accept criticism, interact with coworkers and display socially appropriate

behavior was not significantly limited, while her ability to interact with the general public was

moderately limited.  (Tr. 146.)  Furthermore, Plaintiff's ability to be aware of and take precautions

about ordinary hazards, and her ability to set realistic goals was not significantly limited, while

her ability to appropriately respond to changes in the workplace and go to unfamiliar places was

moderately limited.  (*Id.*)  Dr. Gieseken opined that Plaintiff was capable of performing simple

work-related activities.  (Tr. 147.)

Dr. Gieseken also reviewed Plaintiff's treatment history, and noted that her medical

disposition was based on the affective disorder category.  (Tr. 184.)  Dr. Gieseken stated that a

"medically determinable impairment is present that does not precisely satisfy the diagnostic

criteria" provided.  (Tr. 187.)  Plaintiff was noted to have mild limitation as to her daily activities

and social functioning, and moderate limitation in maintaining concentration, with no episodes of

decompensation.  (Tr. 194.)

     5.     <u>Dr. Najeeb Hussain's Medical Assessment of Ability to Do Work Related Activities</u>

On September 8, 2005, Dr. Najeeb Hussain evaluated Plaintiff's ability to perform daily work-related activities.  (Tr. 204.)  Dr. Hussain concluded that Plaintiff's ability to follow rules at work, interact with the public, use her judgment, interact with a supervisor, and independently function were all fair, meaning that her "[a]bility to function in this area is seriously limited, but not precluded."  (*Id.*)  Dr. Hussain noted, however, that Plaintiff's ability to relate to co-workers and deal with stresses of work was "poor or none," meaning that Plaintiff had "[n]o useful ability to function in this area."  (*Id.*)  Dr. Hussain further noted that Plaintiff had "difficulty in attention and concentration which can impair her functioning."  (Tr. 205.) While Dr. Hussain found that Plaintiff had "poor to no ability" to understand and perform complex job instructions, Plaintiff was found to have a fair ability to understand and carry out moderate to simple job instructions. (*Id.*)  Dr. Hussain believed Plaintiff's memory problems stemmed from her impaired attention span.  (*Id.*)  With respect to her personal social skills, Plaintiff was found to have a fair ability to be emotionally stable and socially predictable, and she was found to have good ability to maintain her personal appearance as well as be reliable, meaning that her "[a]bility to function in this area is limited but satisfactory."  (Tr. 204.)  Finally, Dr. Hussain determined that Plaintiff was capable of managing her benefits in her own best interest, stating that she was "able to explain how to manage her money on a monthly basis."  (Tr. 206.)

## **DISCUSSION**

**A.**    **<u>Standard of Review</u>**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  *See Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  *Fargnoli v. Massanari,* 247 F.3d 34, 35 (3d Cir. 2001); *see also Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  *Blalock v. Richardson*,

483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a

contrary conclusion does not undermine the Commissioner's decision so long as the record

provides substantial support for that decision."  *Sassone v. Comm'r of Soc. Sec.*, 165 Fed. Appx.

954, 955 (3d Cir. 2006) (citing *Blalock*, 483 F.2d at 775).

**B.      Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

*see also Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether

a claimant's impairment is so severe that he "is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Finally, while subjective complaints of pain are considered, alone, they are not enough to establish

disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must

present evidence that his or her affliction "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically accepted clinical and laboratory

diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.      The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[4]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  *Id.; Yuckert*, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id*.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  *Id*.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

---

[4] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and it done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

In *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[5] apply and give reasons why those listings are not met or equaled.  In *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Id*.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In *Burnett*, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett*, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

---

[5]Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  *Id*.

When the claimant has only exertion limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; *Heckler v. Campbell*, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered

throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

However, the burden still remains on the Plaintiff to prove that the impairments in combination

are severe enough to qualify him for benefits.  *See Williams v. Barnhart*, 87 Fed. Appx. 240, 243

(3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis

would have resulted in a qualifying disability).

While *Burnett* involved a decision in which the ALJ's explanation of his step three

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit

applies its procedural requirements, as well as their interpretation in *Jones*, to every step of the

decision.  *See, e.g., Rivera v. Commissioner*, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at

every step, "the ALJ's decision must include sufficient evidence and analysis to allow for

meaningful judicial review," but need not "adhere to a particular format."  *Id*.

**D.**     **ALJ Faulkner's Findings**

ALJ Faulkner applied the five-step sequential evaluation and determined that the Plaintiff

was not disabled within the meaning of the Act.  (Tr. 20.)  ALJ Faulkner found that Plaintiff

satisfied the first step of the evaluation process, given that Plaintiff had not engaged in substantial

gainful activity since the alleged onset of her disability.  (*Id*.)

At step two of the evaluation, ALJ Faulkner found that Plaintiff's "depression, panic

attacks and a drug and alcohol disorder are considered 'severe.'" (*Id*.)

At step three, ALJ Faulkner concluded that the depression, panic attacks and drug and

alcohol disorder did not "meet or equal one of the listed impairments in Appendix 1, Subpart P,

Regulation No. 4"  because the Plaintiff failed to demonstrate that her condition satisfies the

requirements under Appendix 1.  (*Id*.)  ALJ Faulkner further buttressed her conclusion with the

15

findings of expert witness Dr. Gordon, who stated that Plaintiff's depression was moderate.  (Tr. 19.)  ALJ Faulkner noted that during Plaintiff's examinations, she was "oriented, cooperative, relevant and coherent, with intact memory and only slightly reduced concentration, at worst." (*Id.*)  Furthermore, ALJ Faulkner gave little weight to the assessment of Dr. Villasenor and Alyce Lee "as it is clearly based on the fact that [Plaintiff] was non-compliant, rather than on her actual mental status."  (*Id.*)  ALJ Faulkner also pointed out that Plaintiff's psychiatrist's notes were "inconsistent with the assessment and show that the claimant was improving during treatment." (*Id.*)

At step four, the final necessary step of ALJ Faulkner's analysis, Plaintiff was found to have the residual functional capacity to perform past relevant work as a housecleaner, which required Plaintiff to heavily exert herself, and have an insignificant amount of contact with people.  (Tr. 20.)  With respect to Plaintiff's claimed limitations, ALJ Faulkner did not find them to be completely credible because, despite Plaintiff's complaints relating to depression, she had not been compliant with her treatment program.  (Tr. 19.)  In evaluating Plaintiff's mental impairment, ALJ Faulkner assessed that the Plaintiff was able to "understand, remember and carry out simple instructions and to deal with supervisors and co-workers in a low contact, low stress work setting."  (*Id.*)

**E.    Analysis**

Plaintiff contends that ALJ Faulkner's decision should be reversed and Plaintiff should be awarded all DIB and SSI benefits because the ALJ's decision was not supported by substantial evidence.  (Pl.'s Mem. L. at 1.)  Plaintiff contends that: ALJ Faulkner's decision is "unsupported by substantial evidence in the record," and "substantial evidence exists in the record to support a

16

finding of disability pursuant to 42 U.S.C. 405(g) and 1382." (*Id.*)

1.   **Was the ALJ's Decision Unsupported by the Evidence of Record, and Did Substantial Evidence Exist to Support a Finding of Disability?**

Plaintiff claims that ALJ Faulkner's decision is not based on the evidence in the record. The ALJ, however, based each step of the five-step evaluation process on substantial evidence. (Tr. 14-21.)  Plaintiff does not dispute the ALJ's decision at the first three steps of the process. Plaintiff's arguments are directed at step four only.

The ALJ based her step four determination on substantial evidence.  In order to properly evaluate Plaintiff's allegations of impairment, Dr. William Gordon, a licensed psychologist and independent medical expert, testified at the hearing after completely reviewing Plaintiff's medical record and her testimony.  (Tr. 18.)  Dr. Gordon stated that "none of [the Plaintiff's] impairments, either singly or in combination, met or equaled any of the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4." (*Id.*)  Dr. Gordon further testified as to his opinion that the Plaintiff "has the intellectual and cognitive ability to perform simple, repetitive work which does not involve frequent contact with others," due to the fact that she had already performed this type of work, her intelligence was found to be average, and her symptoms were noted to be moderate. (Tr. 18-19.)  The expert testimony by itself provides substantial evidence for the step four determination.

Plaintiff argues that Dr. Hussain's opinion, that plaintiff had "poor to no ability" in certain areas, is entitled to controlling weight.  (Pl.'s Mem. L. at 13.)  As noted in the Defendant's brief, per the regulations, "a physician's opinion is not entitled to controlling weight when it is conclusory and not supported by relevant medical findings or there is contradictory evidence in

17

the record." (D's Mem. L. at 8.)  While the ALJ did take into careful consideration all of the medical evidence presented in regard to the Plaintiff, the medical evidence from Dr. Buceta and Dr. Gordon (the medical expert) were inconsistent with Dr. Hussain's assessment.  The findings in the medical record indicating that Plaintiff was capable of social functioning were supported by Dr. Gordon, who reviewed Plaintiff's medical records and did not find any medical impairment that would preclude her from maintaining her previous employment or a similar unskilled task.

The medical record provides substantial evidence contrary to Plaintiff's claims that her impairment precludes her from gainful employment.  This Court, therefore, finds that the ALJ considered all the medical evidence and that her determination is supported by substantial evidence of record.

Plaintiff argues that the "ALJ's [Residual Functional Capacity] assessment does not factor plaintiff's 'poor to no ability' to deal with work stress and maintain concentration." (Pl's Mem. L. at 10.)  There is a substantial amount of evidence, however, indicating that Plaintiff had sufficient ability in this area.  The ALJ specifically noted that Plaintiff "was able to work for years with her impairment." (Tr. 19.)  Furthermore, at the hearing, Dr. Gordon testified that Plaintiff "has in the past done work . . . despite [her alleged problems] she was able to go to work." (Tr. 264.)

Plaintiff does not engage the issue of whether her non-compliance with treatment should affect the disability determination.  As a whole, the record shows that Plaintiff has not shown good compliance with the treatment recommendations of medical professionals.  The record contains numerous references to Plaintiff's significant history of alcohol dependence and abuse. *See, e.g.*, Tr. 70, 108, 109, 116, 119, 142.  After last being seen on November 9, 1999, Raritan

Bay Mental Health Center closed its case "since client dropped out of treatment and did not respond to outreach attempts." (Tr. 122.)  On June 1, 2003, Plaintiff left Strathmore Treatment Associates against medical advice. (Tr. 108.)  In addition, after last being seen on May 17, 2005, Raritan Bay Mental Health Center once against closed its case "as per Center policy of not fulfilling minimum expectations of keeping scheduled appointments on a regular basis and in view of patient's non-response to outreach follow up." (Tr. 207.)  In sum, the record presents substantial evidence that Plaintiff has not complied with medical recommendations for treatment of the problems she claims have disabled her.

The Social Security regulations give clear guidance on the impact of treatment non-compliance on the disability determination:

> Need to follow prescribed treatment.
> (a) What treatment you must follow.  In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no longer marked and severe.
>
> (b) When you do not follow prescribed treatment.  If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 416.930.  Plaintiff has not provided any reason for her non-compliance, much less a good one.  Pursuant to 20 C.F.R. § 416.930, the ALJ correctly determined that Plaintiff was not disabled.  Examining the evidence in the record as a whole, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: April 4, 2006

    s/ Stanley R. Chesler
_____

STANLEY R. CHESLER, U.S.D.J.